**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BAJA RIVER EAST, LLC, d/b/a QUAY RESTAURANT, | ) ) ) ) | Case No. 15-21282 |
| Debtor. | ) ) ) | Honorable Janet S. Baer |

**NOTICE OF EMERGENCY MOTION**

**PLEASE TAKE NOTICE** that on **Monday, July 6, 2015 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Janet S. Baer, or any judge sitting in her stead, in Room 615 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and then and there present *Emergency Motion Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders: (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling Final Hearing; and (IV) Granting Related Relief*, a copy of which is hereby served upon you.

Dated: July 2, 2015

Respectfully submitted,

**BAJA RIVER EAST, LLC d/b/a QUAY RESTAURANT**

By:  /s/ Thomas R. Fawkes
Harley J. Goldstein
Thomas R. Fawkes, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 216-0734
e-mail: tomf@restructuringshop.com

*Proposed Counsel for the Debtor and Debtor in Possession*

4839-6033-0533, v. 1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BAJA RIVER EAST, LLC, | ) Case No. 15-21282 |
| d/b/a QUAY RESTAURANT, | ) |
| | ) Honorable Janet S. Baer |
| Debtor. | ) |
| | ) **Hearing: Monday, July 6, 2015, at 9:30 a.m.** |

**EMERGENCY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROECTION; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Baja River East, LLC, d/b/a Quay Restaurant (the "*Debtor*"), debtor and debtor in possession in the above-captioned chapter 11 case, by this motion (the "*Motion*"), pursuant to sections 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*") seeks entry of interim and final orders (i) authorizing the use of the Debtor's cash collateral, (ii) providing adequate protection to the Secured Lenders (as defined herein), (iii) scheduling a final hearing on the Motion, and (iv) granting other related relief as necessary. In support of this Motion, the Debtor submits the proposed interim cash collateral budget (the "*Interim Budget*") attached as <u>Exhibit A</u> to the proposed Interim Order (as defined below) granting the Motion and further states as follows:

**RULE 4001(b) DISCLOSURES**

1. Pursuant to Bankruptcy Rule 4001(b), the Debtor makes the following initial disclosures:

a. Under Bankruptcy Rule 4001(b)(1)(B)(i), the only entities with a potential interest in cash collateral are Republic Bank and the Federal Deposit Insurance Corporation.

b. Under Bankruptcy Rule 4001(b)(1)(B)(ii), the Debtor requires the use of cash collateral in order to continue its business operations and preserve the value of its business. The Debtor proposes to pay ongoing expenses incurred in the ordinary course of its business, including: employee-related expenses, inventory purchases, supplies, lease expenses, and insurance.

c. Under Bankruptcy Rule 4001(b)(1)(B)(iii), the Debtor proposes to use cash collateral in accordance with the Interim Budget (as defined herein). The Debtor requests authority to use cash collateral for an initial duration not to exceed thirty days, but does request to use cash collateral for the duration of the chapter 11 case, upon entry of a final order.

d. Under Bankruptcy Rule 4001(b)(1)(B)(iv), the Debtor requests authority to grant certain adequate protection to the Secured Lenders (as defined below) on account of its prepetition liens and security interests in the form of replacement liens.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.  On June 19, 2015 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Case*") in the United States Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*").

5.  The Debtor is functioning as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  The Debtor is the operator of Quay Restaurant ("*Quay*") in Chicago, Illinois, an upscale restaurant located one block from Navy Pier, Chicago's most popular tourist attraction.

The restaurant and bar features an upscale dining room, a sports bar, and rooms for private parties and events that hold up to 200 people.

7. Historically, the Debtor has been profitable; however, Quay has been mired in a number of conflicts with its landlord and has had difficulty generating the cash necessary to service its secured debt.

8. The Debtor filed this Chapter 11 Case in order to ensure that it will be able to provide uninterrupted top-tier service to its clientele while it works to maximize value, likely by refinancing its existing secured debt or by effectuating a "going concern" sale of its assets. Filing the bankruptcy to accomplish this objective was deemed necessary based on feedback from and ongoing discussions with potential lenders and purchasers.

9. Obtaining cash collateral use is a critical component of the Debtor's efforts to maximize value, and of course doing so implicates the interests of the Debtor's secured creditors. The first of these is Republic Bank, as successor in interest to Edgebrook Bank ("*Republic*"), which took on three of the loans for which the Debtor is liable when it purchased certain of Edgebrook Bank's assets. The other secured lender is the Federal Deposit Insurance Corporation (the "*FDIC*," and collectively with Republic, the "*Secured Lenders*"), which retained the remaining two loans on which the Debtor is liable after Edgebrook Bank was shut down. The Debtor is still analyzing its loan documents; however, the Debtor believes that Republic asserts a security interest (the "*Republic Security Interest*") in all assets of the Debtor. In addition, the Debtor believes that the FDIC also asserts a security interest in all assets of the Debtor (the "*FDIC Security Interests*"). At the moment, it is unclear exactly what priority Republic and the FDIC have on the Debtor's assets. However, for purposes of the Interim Order (as defined below), the priority of the Secured Lenders' liens are purely academic.

10. To the best of the Debtor's knowledge, the remaining secured creditors, if any, have security interests in certain specific property of the Debtor, likely purchase money security interests.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks interim and final orders (respectively, the "*Interim Order*" and "*Final Order*," and collectively, the "*Cash Collateral Orders*"), *inter alia*:

   a. authorizing the Debtor's use of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("*Cash Collateral*"), pursuant to the terms of the Cash Collateral Orders and the budgets to be attached to such Cash Collateral Orders (initially, pursuant to the Interim Budget as part of the Interim Order);

   b. providing adequate protection to the Secured Lenders for the use of their Cash Collateral;

   c. modifying the automatic stay imposed by section 362 of the Bankruptcy Code as required to permit the Debtor and the Secured Lenders to implement the terms of the Cash Collateral Orders; and

   d. scheduling a final hearing (the "*Final Hearing*") to be held no later than twenty (20) days after the entry of the Interim Order to consider entry of the Final Order and approval of the Final Budget and approving the proposed notice procedures for the Final Hearing.

12. Pending entry of the Final Order, the Debtor seeks approval of the Interim Order, which will: (i) authorize the Debtor's use of the Secured Lenders' Cash Collateral on the terms and conditions in the Interim Order and Interim Budget; (ii) authorize the proposed adequate protection; (iii) schedule the Final Hearing; and (iv) approve the proposed notice thereof.

## DISCUSSION

**A.    Basis for Expedited Relief**

13. The Debtor brings this Motion on an expedited basis to avoid the immediate and irreparable harm that will be suffered by the estate if the Debtor is not able to sustain its business as a going concern. The Debtor needs immediate access to the Cash Collateral pending a Final Hearing on the Motion.

14. Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion. It also provides, however, that the Court may grant interim relief to the extent necessary to avoid immediate and irreparable harm to the estate. Pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules, the Debtor requests that the Court conduct a preliminary hearing as soon as practicable to enter the proposed Interim Order authorizing the Debtor to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Interim Budget pending the Final Hearing.

**B.     The Need for Use of Cash Collateral**

15. The Debtor has been operating using non-cash collateral, as neither of the Secured Lenders have a security interest in the Debtor's prepetition cash. However, due to the existence of "proceeds" language in the UCCs filed by the Secured Lenders, they arguably can assert a security interest in the Debtor's postpetition Cash Collateral. As noted, the Debtor has an immediate need to use the Cash Collateral in order to assure the orderly administration of its bankruptcy estate and to continue to operate its business. Without use of the Cash Collateral, the Debtor will not be able to pay its direct operating expenses. In fact, if the Debtor is not able to use Cash Collateral, even on an interim basis, it would likely result in cessation of the Debtor's ongoing operations and cause irreparable harm to the Debtor's estate. Put simply, the Debtor cannot continue operations or its restructuring efforts absent use of the Cash Collateral.

**C.     Adequate Protection**

16. Section 363(c)(2) of the Bankruptcy Code provides that debtors may not use, sell, or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). "Cash collateral" is defined to mean "cash,

negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

17. Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. Although "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three non-exclusive examples of what may constitute adequate protection:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

18. According to the legislative history, a finding of adequate protection is "left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principals." H.R. Rep. No. 595, 95th Cong., 2nd Sess. 339 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6295. *See also In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Nashua Trust Co.*, 73 B.R. 423, 430-31 (Bankr. D. N.J. 1987). The purpose is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re Planned Sys., Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987).

19. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. As will further be demonstrated at the hearing on this Motion, regardless of whether the Secured Lenders consent to the Debtor's use of Cash Collateral, the Secured Lenders will be adequately protected for the reasons set forth below.

20. As adequate protection to the Secured Lenders for the Debtor's use of Cash Collateral hereunder, the Debtor shall provide the Secured Lenders, to secure repayment of an amount equal to any diminution in value of the Secured Lenders' Cash Collateral, replacement liens (the "*Adequate Protection Liens*") on the Secured Lenders' existing collateral. As between Republic and the FDIC, such Adequate Protection Liens shall be of the same priority as existed between the Secured Lenders prior to the Petition Date, and more generally, the Adequate Protection Liens shall be subject only to, in the following order of priority: (a) valid, perfected, and enforceable prepetition liens which were senior to the Secured Lenders' respective liens or security interests as of the Petition Date, (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, (c) the amount of the Debtor's professionals' fees and disbursements accrued as of the date of the termination of the Debtor's use of Cash Collateral.

21. The Adequate Protection Liens shall be deemed perfected automatically upon entry of the Interim Order, without the necessity of the filing of any UCC-1 financing statement, state or federal notice, mortgage, or similar instrument or document in any state or public record or office and without the necessity of taking possession or "control" (within the meaning of the Uniform Commercial Code) of any Collateral.

22. Pursuant to section 361 of the Bankruptcy Code, replacement liens in the nature of those proposed by the Debtor in this instance serve as adequate protection. 11 U.S.C. § 361; *see*

*also In re Am. Consol. Transp. Companies, Inc.*, 09-BK-26062, 2009 WL 3571268 (Bankr. N.D. Ill. Oct. 28, 2009) ("A debtor may provide adequate protection through periodic cash payments, replacement liens, or 'the indubitable equivalent' of the creditor's interest").

23. Further, the very fact that the Debtor will be able to continue operating as a result of being able to use the Cash Collateral constitutes adequate protection. Courts have recognized that the preservation of the going concern value of a secured lender's collateral constitutes adequate protection of such creditor's interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution in the value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditor's secured position would be enhanced by the continued operation of the debtor's business). The ability of the Debtor to finance, through the use of Cash Collateral, its ongoing operations as it restructures its indebtedness and business for the benefit of all creditor constituencies is in the best interests of the Debtor, all of its creditors, and its estate.

24. In this case, authorization of the use of cash collateral is especially appropriate given that the Interim Budget indicates that Debtor's cash position will increase. In other words, it is unlikely that there will be any diminution to the value of the Secured Lenders' Cash Collateral. *See In re Karl A Neise, Inc.*, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981) (where a secured creditor's interest is being maintained and cash collateral is to be used to meet operating and overhead expenses, a debtor may provide adequate protection for the use of proceeds derived from prepetition assets by granting a secured creditor a replacement lien on postpetition assets); *see also RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (the focus of the adequate protection requirement is only to protect a secured creditor from

4811-7286-9925, v. 2                    8

diminution in the value of its interest in the particular collateral during the period of use); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996).

25.     The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the estate and to all parties-in-interest in this Chapter 11 Case.

**D.     Request for a Final Hearing**

26.     Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor respectfully requests that this Court set a date for the Final Hearing. The Debtor requests that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the Final Hearing, if any, along with a copy of the proposed Final Budget, by first class mail upon the Secured Lenders, the United States Trustee, the Debtor's twenty (20) largest creditors, and any party having filed a request to receive service in this chapter 11 case. The Debtor requests that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

## NOTICE

27.     Given the timing of this Motion, notice of this Motion will be given to (a) the United States Trustee via electronic mail and facsimile, (b) the Secured Lenders via electronic mail and via facsimile, (c) each of the top twenty unsecured creditors for whom a facsimile number could be located, and (d) all parties that have filed an appearance in this Chapter 11 Case via CM/ECF.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtor respectfully requests that this Court (a) enter an Interim Order substantially in the form submitted herewith; (b) schedule a final hearing on the relief requested herein; and (c) grant such further relief as may be equitable and just.

Dated: July 2, 2015                                Respectfully submitted,

                                          **BAJA RIVER EAST, LLC d/b/a QUAY RESTAURANT**

                                          By: /s/ Thomas R. Fawkes

Harley J. Goldstein, Esq.
Thomas R. Fawkes, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 216-0734
e-mail: tomf@restructuringshop.com

*Proposed Counsel for the Debtor and Debtor in Possession*