# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | No. 15-21282 |
| BAJA RIVER EAST, LLC d/b/a ) | |
| QUAY RESTAURANT, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Janet S. Baer |
| ) | Hearing Date: July 15, 2015 |
| _____) | Hearing Time: 9:30 a.m. |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on July 15, 2015 at 9:30 a.m., or as soon thereafter as I may be heard, I shall appear before the Honorable Judge Baer, or any judge sitting in her stead in **Courtroom 615** of the U.S. Bankruptcy Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois and shall present **AH-River East's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1),** a copy of which is attached hereto and served upon you.

Dated: July 8, 2015                    Respectfully submitted,

                                        **AH-RIVER EAST LLC**


                                        By:  _/s/Beau T. Greiman_
                                               Beau T. Greiman

Beau T. Greiman (ARDC #6225076)
GREIMAN, ROME & GRIESMEYER, LLC
24115 West 103rd Street, Suite B
Naperville, Illinois  60564
(630) 369-9901
bgreiman@grglegal.com

1

## CERTIFICATE OF SERVICE

I, Beau T. Greiman, an attorney, hereby certify that on July 8, 2015, I caused true and correct copies of the foregoing Notice of Motion and AH-River East's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) to be served upon the parties registered to receive notice via the court's ECF notice system by electronically filing them.

| | | |
|---|---|---|
| Atty for Debtor: | Sean P. Williams | seanw@restructuringshop.com |
| | Thomas R. Fawkes | tomf@restructuringshop.com |
| U.S. Trustee: | Stephen G. Wolfe | steve.g.wolfe@usdoj.gov |
| U.S. Trustee: | Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Republic Bank of America | Michael B. Bregman<br>Edward P. Freud | mbregman@rfbnlaw.com |

and via U.S. First Class Mail, proper postage prepaid, to all parties below and on the attached list, this 8th day of July, 2015.

Debtor:

Baja River East, LLC
d/b/a Quay Restaurant
210 W Campus Dr. #C
Arlington Heights, IL 60004

/s/ Beau T. Greiman
Beau T. Greiman (ARDC #6225076)
GREIMAN, ROME & GRIESMEYER, LLC
24115 W 103rd Street, Suite B
Naperville, Illinois 60564
(630) 369-9901
(630) 369-9886 (facsimile)
bgreiman@grglegal.com

2

## TOP 20 UNSECURED CREDITORS

| | |
|---|---|
| Republic Bank<br>120 W Madison St<br>Chicago, IL  60602 | Fox General Contracting Inc.<br>PO Box 180<br>Wasco, IL  60183 |
| Illinois Dept of Revenue<br>Bankruptcy Section<br>PO Box 64338<br>Chicago, IL  60664 | Jesse T. Boyle<br>1301 Degener Ave<br>Elmhurst, IL 60126 |
| Webster & Powell<br>320 W Ohio St<br>Chicago, IL  60610 | City of Chicago<br>Bankruptcy<br>121 N LaSalle St.,<br>Room 107A<br>Chicago, IL  60602 |
| Weiss, Sugar, Dvorak & Dusek, Ltd.<br>20 N Wacker Dr, Ste 2250<br>Chicago, IL  60606 | La Farine Bakery<br>2909 N Milwaukee Ave<br>Chicago, IL  60618 |
| U.S. Foodservice<br>800 Supreme Dr<br>Suite 200<br>Bensenville, IL  60106 | Premier Produce Company<br>2405 S Oakley Ave<br>Chicago, IL  60608 |
| Wirtz Beverage Illinois<br>3333 S Laramie Ave<br>Cicero, IL  60804 | BDO<br>130 E Randolph St<br>Ste 2800<br>Chicago, IL  60601 |
| Dalmares Produce Inc.<br>1314 W 21st St<br>Chicago, IL  60608 | Nicholas Steger<br>8908 Osceola Ave<br>Morton Grove, IL  60053 |
| Swisher Hygiene Franchise Corp.<br>4725 Piedmont Row Dr<br>Ste 400<br>Charlotte, NC  28210 | Nicole's Divine Crackers<br>1505 N Kingsbury St<br>Chicago, IL  60642 |
| Fortune Fish Company<br>PO Box 203<br>Bedford Park, IL  60499 | Chicago Blackhawk Hockey Team, Inc.<br>680 N Lake Shore Dr<br>Floor 19<br>Chicago, IL  60611 |
| Mahoney Environmental<br>37458 Eagle Way<br>Chicago, IL  60678-1374 | Farmer Friendly Foods<br>W2290 State Road 106<br>Jefferson, WI  53549 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | No. 15-21282 |
| BAJA RIVER EAST, LLC d/b/a ) | |
| QUAY RESTAURANT, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hon. Janet S. Baer |
| ) | Hearing Date: July 15, 2015 |
| _____) | Hearing Time: 9:30 a.m. |

### AH-RIVER EAST'S MOTION FOR RELIEF FROM
### AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)

**AH-River East LLC** ("AH-River East" or "Landlord"), successor-in-interest to Cindy O'Drobinak, Receiver (the "Receiver"), through its undersigned counsel, hereby moves pursuant to Section 362(d)(1) of the Bankruptcy Code and Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure, for entry of an Order for relief from the automatic stay imposed under 11 U.S.C. § 362(a) (the "Stay") with respect to Debtor, **Baja River East, LLC** ("Baja" or "Debtor"), and property of its estate. In support thereof, Landlord states as follows:

### INTRODUCTION

1. In this Motion, Landlord seeks to lift the Stay for cause under § 362(d)(1) to permit it to continue prosecuting its forcible entry and detainer action against Debtor in the Circuit Court of Cook County, Illinois. In its forcible entry and detainer action, Landlord is seeking an order of possession to evict Debtor from an approximately 10,800 square foot commercial space, which Debtor has used to operate a restaurant known as Quay.

2. As explained below, Debtor owes Landlord more than $443,000 for past due rent and other charges. In addition, Debtor has committed non-monetary defaults under the terms of its lease. On April 30, 2015, Landlord served a ten-day notice of monetary default and a ten-day

1

notice to quit on Debtor, which notices effectively terminated Debtor's right to possession of the leased premises, according to the lease's own terms and under Illinois' forcible entry and detainer act, by at least May 11, 2015. Landlord commenced its forcible entry and detainer action on May 20, 2015.

3. On June 19, 2015, almost six weeks after Debtor's right to possession ended, and one month after Landlord's forcible entry and detainer lawsuit began, Debtor commenced this case. Debtor's decision to file this case is nothing more than a transparent attempt to forestall the entry of an order of possession against it in the forcible entry and detainer litigation. Debtor has not disputed the fact that it owes Landlord hundreds of thousands of dollars in past due rent, nor has Debtor claimed that Landlord improperly terminated its right to possession. Rather than filing a timely answer in the forcible entry and detainer lawsuit, Debtor simply initiated this case.

4. Under the circumstances, the Stay should be lifted to permit Landlord's forcible entry and detainer lawsuit to continue. According to the Seventh Circuit, in a case where a landlord has terminated a debtor's lease prior to the commencement of the debtor's bankruptcy case but has not yet obtained an order of possession, "***all roads lead to the state court***," even if the debtor claims that it has some valid defense to the eviction proceedings. *Williams v. Chicago Housing Authority,* 144 F.3d 544, 550 (7th Cir. 1998)(emphasis added). In the words of the Seventh Circuit:

> [I]f a tenant has no viable defenses, it makes sense to permit the landlord to get its judgment of possession; if the tenant has viable defenses, then it makes sense to permit [the tenant] to assert them in state court. The sooner those issues are resolved, the sooner the parties can move on: either the landlord will be able to get its writ of possession and evict the tenant or the tenant can try to assume the now-valuable lease as part of [its] plan.

*Id.*

2

## FACTUAL BACKGROUND

### A. THE PARTIES AND PROPERTY

5.  Landlord is an Illinois limited liability company and the owner of a commercial building in Chicago commonly known as The Lofts at River East (the "Building") situated on real estate (the "Real Estate") located between East Illinois Street and the Ogden Slip, lying West of North Lake Shore Drive and East of McClurg Court (as extended southward), in Chicago, Illinois, described as follows:

> Lot 1, in Block 5, in Cityfront Center, being a resubdivision in the North Fraction of Section 10, Township 39 North, Range 14 East of the Third Principal Meridian, according to the Plat thereof recorded in the office of the Cook County Recorder of Deeds on February 24, 1987 as document no. 87106320, in Cook County, Illinois.

(Ex. J, Pleviak Aff., at ¶ 2.)

6.  Debtor currently occupies approximately 10,847 square feet of retail, storage, and office space in the Building consisting of space numbers 163, 170, 171 and 173 as more particularly described in the lease referenced below (the "Premises"), wherein Debtor currently operates a restaurant called "Quay." (*Id*. at ¶3.)

### B. THE LEASE AND ITS ASSIGNMENTS

7.  On June 1, 2010, Cindy O'Drobinak, Receiver (the "Receiver" pursuant to case no. 09 CH 8486 in the Circuit Court of Cook County, Illinois, Chancery Division, and one of Landlord's two predecessors-in-interest), entered into a Retail Space Lease Agreement with Debtor for the Premises (the "Lease"). (*Id*. at ¶4.) A true and correct copy of the Lease is attached hereto and incorporated herein as **Exhibit A**. (Ex. J at ¶5; Ex. A.)

8.  The Receiver directly or indirectly assigned rights under the Lease to CXA-16 Corp., a Texas corporation. In turn, Landlord has succeeded to all of the rights and obligations

3

of landlord under the Lease by virtue of an assignment. (Ex. J at ¶6.) On March 15, 2013, Landlord acquired the Real Estate and Building, and CXA assigned its rights, title and interests in, under and to the Lease to Landlord (and, conversely, Landlord assumed CXA's right, title and interest in, under and to the Lease) pursuant to the terms of a Bill of Sale and Assignment and Assumption of Leases. (*Id.*) A true and correct copy of the March 15, 2013 Bill of Sale and Assignment and Assumption of Leases and Contracts between CXA and Landlord—redacted to remove confidential financial information—is attached hereto and incorporated herein as **Exhibit B**. (Ex. J at ¶6; Ex. B.) In fact, Debtor executed a document wherein Debtor acknowledged AH-River East as the landlord to the Lease. (*See* **Exhibit C**.[1])

C. **DEBTOR'S DEFAULTS OF THE LEASE**

9. Under the Lease, Tenant agreed to pay to Landlord annual "Base Rent" over the term of the 10-year Lease as follows:

Base Rent:

| Months | Monthly | Annually | |
|--------|---------|----------|---|
| 1-12 | $17,174.42 | $206,093.00 | ($19.00/sq. ft.) |
| 13-24 | $18,078.33 | $216,940.00 | ($20.00/sq. ft.) |
| 25-36 | $18,982.25 | $227,787.00 | ($21.00/sq. ft.) |
| 37-48 | $19,886.17 | $238,634.00 | ($22.00/sq. ft.) |

Months 49-120 are to be computed pursuant to the calculations specified in Section 3.1 of this Lease.

(Ex. A, Schedule, par. (k)).

---

[1] Schedule A to Exhibit C is the Lease. As the Lease is already attached as Exhibit A to this Motion, it has been omitted from Exhibit C for this filing.

4

10. Under the Lease, Tenant also agreed to pay Landlord a percentage of Tenant's gross sales (Percentage Rent), plus Tenant's pro rata share of taxes (Additional Rent). (Ex. A, §3). The Base Rent, Percentage Rent, Additional Rent and all other amounts due under the Lease are referred to collectively as "Rent" in the Lease. The Tenant also agreed to pay late charges and default interest on any past due Rent, in accordance with the terms of the Lease. (Ex. A, §3.5).

11. Pursuant to Section 16.1 of the Lease, Landlord has the right to terminate the Lease, or terminate Tenant's right to possession, without terminating the Lease, in the event: (i) any petition for bankruptcy is filed by any Guarantor; (ii) Tenant is dissolved; (iii) Tenant defaults in the prompt payment of rent for the first or second time in any calendar year, and the default continues for ten (10) days after written notice to Tenant; (b) Tenant defaults in the prompt payment of rent for the third or subsequent time in any calendar year. (Ex. A, § 16.1).

12. Prior to Landlord sending the default notices, Tenant defaulted on its obligation to pay Rent under the Lease for at least the months of December 2013 through the present. As of May 13, 2015, the past due Rent, interest and late charges owed from Tenant to Landlord totaled at least $443,775.49. (Ex. J, ¶¶ 8,9). No payments have been made since then and the amount owed has only grown larger. (Ex. J, ¶ 9).

13. In addition to the failure to pay rent as described above, Tenant also breached the Lease in a number of material and non-monetary ways (the "Non-Monetary Defaults"). The Non-Monetary Defaults are set forth in specific detail in the Landlord's 10-day notice to quit (*See*, Ex. F), which is incorporated herein by reference, and include the following:

- Tenant was dissolved, (*see* certified copy of Articles of Dissolution, attached hereto as **Exhibit D**);

5

• Guarantor Michael K. O'Malley filed a petition for bankruptcy, (*see* certified copy of petition for bankruptcy attached hereto as **Exhibit E**).

### D. LANDLORD'S NOTICES OF DEFAULT AND TERMINATION OF THE LEASE

14. Following Debtor's defaults under the Lease, Landlord served Debtor with several notices of default. On April 30, 2015, Landlord served Debtor with a 10-day notice of monetary default concerning Debtor's failure to pay rent due and owing under the Lease ("10-Day Notice"). Also on April 30, 2015, Landlord served Debtor with a 10-day notice of default concerning the Non-Monetary Defaults (the "10-Day Notice to Quit") (collectively, the "Notices", attached hereto as **Exhibit F**).

15. Debtor has failed to pay, or attempt to pay, the full amount demanded in the 10-Day Notices. Pursuant to the terms of the Lease, and as explained in the 10-Day Notice to Quit, Debtor's right to possession of the Premises terminated no later than May 11, 2015, nearly six weeks prior to the commencement of this case. (Ex. F.) As such, the Debtor's right to possession of the Premises was properly terminated prior to the commencement of this case and Debtor no longer has any right to remain in possession of the Premises.

### E. LANDLORD'S CLAIM FOR UNPAID RENT AND OTHER CHARGES

16. Pursuant to the terms of the Lease, as of May 13, 2015, there remained due and owing from Debtor the sum of $443,775.49 (consisting of unpaid rent, late charges, interest and past-due amounts as set forth in the May 13, 2015 payment history attached hereto as **Exhibit G**). The amount owed by Debtor to Landlord only grew larger from May 13, 2015 through the date of Debtor's Voluntary Petition. (Ex. J at ¶9.)

### F. LANDLORD'S FORCIBLE ENTRY AND DETAINER ACTION

17. On May 20, 2015, Landlord commenced a forcible entry and detainer action against Debtor in the Circuit Court of Cook County, Illinois, which case was captioned *AH-River*

*East LLC v. Baja River East LLC, et al.,* 15 M1 709475 (the "Baja Litigation"). A true and correct copy of Landlord's verified complaint (the "Baja Complaint") commencing the Baja Litigation is attached hereto as **Exhibit H**.[2] Debtor has appeared in the Baja Litigation and, under the terms of the most recent order in the Baja Litigation, Debtor was required to file an answer to the Baja Complaint on or before July 1, 2015. (**Exhibit I**.)

### G. DEBTOR'S BANKRUPTCY PETITION

18. On June 19, 2015, two days after the circuit court entered its order in the Baja Litigation, Debtor filed its Voluntary Petition (the "Petition") commencing this case. Counsel for Debtor in the Baja Litigation informed counsel for Landlord of this proceeding only days before Debtor's answer was due in the Baja Litigation.

### H. NOTICE OF THIS MOTION

19. Notice of this Motion has been served on: (i) Debtor; (ii) Debtor's counsel; (iii) the Trustee; (iv) the Office of the United States Trustee; (v) all other parties that have requested ECF notice; (vi) the 20 largest unsecured creditors on the list filed pursuant to Rule 1007(d).

## ARGUMENT

### I. THE STAY SHOULD BE LIFTED FOR CAUSE UNDER §362(d)(1) TO PERMIT THE BAJA LITIGATION TO PROCEED.

20. Under §362(d)(1), the Stay should be lifted to permit the Baja Litigation to proceed to determine if Landlord is entitled to an order of possession. In its pertinent part, §362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … for cause ….

11 U.S.C. §362(d)(1).

---

[2] The exhibits to the Verified Complaint have been omitted in this filing as each of those exhibits is also an exhibit to this Motion.

7

21. As explained in more detail below, the Seventh Circuit has held that the automatic stay should be lifted for cause under §362(d)(1) to allow a pending eviction matter to proceed in state court where, as here, (1) the landlord terminated the debtor's lease prior to the commencement of the debtor's bankruptcy proceedings; and (2) the state court has not yet ruled on whether the landlord is entitled to an order of possession. *Williams v. Chicago Housing Authority,* 144 F.3d 544, 550 (7th Cir. 1998). According to the Seventh Circuit, in a case where a landlord has terminated a debtor's lease prior to the commencement of the debtor's bankruptcy case but has not yet obtained an order of possession, "***all roads lead to the state court***," even if the debtor claims that it has some valid defense to the eviction proceedings. *Id.* (emphasis added). In the words of the Seventh Circuit:

> [I]f a tenant has no viable defenses, it makes sense to permit the landlord to get its judgment of possession; if the tenant has viable defenses, then it makes sense to permit [the tenant] to assert them in state court. The sooner those issues are resolved, the sooner the parties can move on: either the landlord will be able to get its writ of possession and evict the tenant or the tenant can try to assume the now-valuable lease as part of [its] plan.

*Id.*

### A. **Landlord Properly Terminated Debtor's Right to Possession of the Premises in Accordance With The Lease's Terms and Applicable Illinois Law Prior to the Commencement of this Case.**

22. In this case, there is no doubt that Landlord terminated Debtor's right to possession of the Premises prior to the commencement of this case. As noted previously, Landlord served Debtor with the Ten-Day Notice on April 30, 2015. The Ten-Day Notice effectively terminated Debtor's right to possession of the Premises under the Lease's own terms and under Illinois law as of May 11, 2015—approximately six weeks before the commencement of this case.

8

23. Bankruptcy courts apply state law to determine when a lease has ended. *See, e.g., Williams,* 144 F.3d at 547. In Illinois, "[a] lease is an agreement which gives rise to the relationship of landlord and tenant. It is essentially a type of contract and, as such, it is governed by the rules which govern contracts generally." *Midland Mgmt. Co. v. Helgason,* 630 N.E.2d 836, 839 (Ill. 1994). "The principal function of the court in construing a lease is to give effect to the intention of the parties as expressed in the language of the document read as a whole." *Id.* As a result, "when analyzing whether a lease has ended, the first and most important question is whether the lease ended under its terms." *Williams,* 144 F.3d at 547.

24. In addition, because Illinois has enacted the Illinois Forcible Entry and Detainer Act (the "FED Act"), "an important second question is whether [the landlord] complied with statutory requirements when it terminated [the tenant's] lease." *Id.* Where, as here, a landlord seeks to terminate a tenant's right to possession of leased premises for nonpayment of rent, the FED Act requires the landlord to serve a five-day written notice on the tenant demanding payment. 735 ILCS 5/9-209. If the tenant fails to pay the past due rent in full within the five-day cure period set forth in the notice, the FED Act provides that the tenant's lease is terminated and its right to possession of the property ends. *Id.*

25. In this case, Landlord properly ended Debtor's right to possession in accordance with both the Lease's own terms and the requirements of the FED Act. As noted above, Landlord served Debtor with the Ten-Day Notice on April 30, 2015. (Ex. F.) By that time, Debtor had defaulted on the payment of rent for more than a year. (Ex. G.) As a result, Landlord was entitled to terminate Debtor's right to possession with five-days written notice under the FED Act, 735 ILCS 5/9-209, and Landlord was entitled to terminate Debtor's right to possession with "no notice" according to section 16.1(vi) of the Lease, (ex. A, Lease, §16.1(vi)).

Therefore, by serving Debtor with the Ten-Day Notice, Landlord exceeded the termination requirements of the FED Act, and exceeded the termination requirements of the Lease.

26. The Landlord also complied with both statutory notice requirements and the Lease's notice requirements for Debtor's non-monetary defaults. Where, as here, a landlord seeks to terminate a tenant's right to possession of leased premises for non-monetary default of any of the terms of the lease, the FED Act requires the landlord to serve a ten-day written notice on the tenant of the termination of the tenancy and right to possession. 735 ILCS 5/9-210.

27. Here, Landlord served the Debtor with a Ten-Day Notice to Quit on April 30, 2015. (Ex. F). By that time, Debtor had breached the Lease by the filing for bankruptcy by one of the Guarantor's (Ex. A, Lease §16.1(i)); and by the corporate dissolution of the Debtor (Ex. A, Lease §16.1(ii)). As a result, Landlord was entitled to terminate Debtor's right to possession with ten days written notice under the FED Act, 735 ILCS 5/9-210, and Landlord was entitled to terminate Debtor's right to possession with "no notice" according to section 16.1(i), (ii) of the Lease, (ex. A, Lease, §16.1(i), (ii)).

28. This means Debtor's right to possession of the Premises ended on May 11, 2015—long before this case began. Moreover, Landlord also commenced the Baja Litigation well before this case began.

      **B.** **It Makes Far More Sense to Lift the Stay to Permit Landlord to Obtain a Prompt Order of Possession Than It Does to Keep the Stay in Place With Regard to a Terminated Lease Debtor Can No Longer Assume.**

29. Given the fact that Debtor's right to possession of the Premises was terminated prior to the commencement of this case, it makes far more sense to lift the Stay to permit Landlord to obtain an order of possession than it does to keep the Stay in place with regard to a lease that has already ended (and cannot be assumed by Debtor).

30. Under §365(c)(3) of the Bankruptcy Code, a debtor cannot assume a lease that was terminated prior to the commencement of its bankruptcy case. In its pertinent part, §365(c)(3) provides that a lease may **_not_** be assumed if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order of relief." 11 U.S.C. §365(c)(3). As a result, a lease that was terminated before the debtor's bankruptcy began has no value to the debtor or its estate. *Williams,* 144 F.3d at 550.

31. Moreover, even if a debtor claims to have some valid defense that might revive its leasehold rights, it still makes more sense to permit a previously filed eviction lawsuit to continue in state court. According to the Seventh Circuit, state courts likely have more expertise with the narrow area of forcible entry and detainer law, and there is no need for federal bankruptcy courts to devote their limited resources to resolving such issues. *Id.* In addition, if bankruptcy courts regularly allow tenants to litigate defenses in connection with bankruptcy proceedings, "tenants might be encouraged to file a bankruptcy petition not only to forestall an eviction, but also to seek a more favorable forum for what might otherwise be a foregone conclusion." *Id.*

32. Here, Debtor has no valid defenses to assert in the Baja Litigation. Indeed, Debtor has not asserted a single defense in the Baja Litigation. Thus, Debtor likely decided to initiate this case in an effort to forestall the entry of an order of possession, but Debtor is ultimately accomplishing nothing besides a needless delay of the inevitable. Debtor's right to possession has been terminated, it cannot be assumed by Debtor and it therefore has no value to Debtor or its estate. Under the circumstances, there is clearly sufficient cause to lift the Stay pursuant to §362(d)(1) for all of the reasons described by the Seventh Circuit in the *Williams* case.

## **CONCLUSION**

WHEREFORE, Landlord respectfully requests the following relief:

(a) that this Court lift the Stay to permit the Baja Litigation to proceed to judgment regarding the issues of termination of the Lease and Landlord's entitlement to an order of possession;

(b) that this Court waive the 14-day stay of this Order provided in Bankruptcy Rule 4001(a)(3) in light of the absence of equity in the Premises.

Dated:  July 8, 2015                                          Respectfully submitted,

                                            **AH-RIVER EAST LLC**

                                            By:  */s/Beau T. Greiman*
                                                   Beau T. Greiman

Beau T. Greiman
GREIMAN, ROME & GRIESMEYER, LLC
24115 W. 103rd Street, Suite B
Naperville, Illinois  60564
(630) 369-9901
(630) 369-9886 (fax)
bgreiman@grglegal.com